UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF ALABAMA

In re:
DONALD THOMAS GLENN and
SHEILA CAMPBELL GLENN,
    *Debtors*.

Case No. 03-15220-MAM-13

DONALD THOMAS GLENN and
SHEILA CAMPBELL GLENN,
    *Plaintiffs,*
v.

Adv. No. 09-01089

OCWEN LOAN SERVICING, LLC
    *Defendant.*

**ORDER GRANTING SUMMARY JUDGMENT TO DEFENDANT
AND DENYING SUMMARY JUDGMENT TO PLAINTIFFS**

W. Lawrence Deas, Attorney for Plaintiffs, Tupelo, MS
Elizabeth Lemond McKeen, Attorney for Defendant, Newport Beach, CA

This case is before the Court on the motions of plaintiffs and defendant for summary judgment. The Court has jurisdiction to hear these matters pursuant to 28 U.S.C. §§ 157 and 1334 and the Order of Reference of the District Court. These matters are core proceedings pursuant to 28 U.S.C. § 157 and the Court has the authority to enter a final order. For the reasons indicated below, the Court is granting the defendant's motion for summary judgment and is denying the plaintiffs' motion.

**FACTS**

Donald and Shelia Glenn filed their chapter 13 case on September 11, 2003. They had a mortgage with Ocwen on their home. Ocwen filed a timely claim in the chapter 13 case on May 7, 2004, asserting prepetition arrearages of $21,549.99 on the Glenns' mortgage. The debtors objected to Ocwen's claim on March 22, 2006. Ocwen did not respond to the objection and the Court sustained the objection and disallowed Ocwen's entire claim in an order dated May 2,

1

Case 09-01089    Doc 50    Filed 05/28/10    Entered 05/28/10 17:03:47    Desc Main
Document     Page 1 of 11

2006. The Glenns made all required payments in their chapter 13 case and received a discharge on March 4, 2009. The Glenns' bankruptcy case was closed the same day. Ocwen sent billings to the Glenns postbankruptcy which included the disallowed amounts on the bills. The bills did not reflect the disallowed amounts as due or payable. The Glenns continued to send a monthly mortgage payment of $429 which Ocwen accepted.

Ocwen asserts that it performed a "bankruptcy reconciliation" on the Glenns' account after their discharge but did not actually purge the disallowed amount from its system because a litigation hold that had been placed on the file had not yet been removed. Ocwen made no demand for payment of the disallowed amount. It issued no notice of default or acceleration.

The Glenns never paid any of the disallowed amounts. The amounts were removed from the account at some point after September 14, 2009. The Glenns never contacted Ocwen about the disallowed amounts. Ocwen did report to Experian, Equifax and Transunion that the Glenns' mortgage debt was "past due." In the summary judgment pleadings, the debtors have shown no actual damage to them from these reports.

## LAW

### I.

The Glenns' complaint seeks damages from Ocwen on three grounds. First, Ocwen failed to remove the disallowed charges from their account for 4 years which the Glenns allege was a violation of the Court claim order and was contemptuous and therefore is punishable under 11 U.S.C. § 105. Second, the Glenns allege that Ocwen's actions postdischarge violated the discharge injunction of 11 U.S.C. § 524(a). Third, the Glenns argue that Ocwen failed to comply with Federal Rule of Bankruptcy Procedure 2016 when it charged postpetition feeds and costs to the Glenns' account. The Glenns state that since Ocwen did not request court approval of the fees and costs under Rule 2016, the fees cannot be allowed. The Glenns also allege the fees and

2

costs were in violation of their plan, the order confirming their plan, and other rulings of this Court.

Ocwen asserts that it did act properly. As to the first and second counts, Ocwen asserts that it never sought to collect, recover, or offset the disallowed amounts. Ocwen states that the disallowed amounts were on the Glenns' records as "mere accounting entries." Ocwen argues that since it did not attempt to collect the disallowed charges, it could not have violated the order disallowing its claim or the discharge injunction. Ocwen asserts that a coercive contempt order would be improper because there is no action that the Court could order Ocwen to correct. Finally, Ocwen argues that since it did not collect any of the disallowed amounts there is nothing for it to disgorge. As to the third prong of the Glenns' complaint, Ocwen asserts that it has no obligation to disclose postconfirmation fees and expenses. Ocwen argues that if its fees had to be disclosed and approved, that process would be a modification of the mortgage contract between the Glenns and Ocwen in violation of Section 1322(b)(2) which states that home mortgages cannot be modified in a chapter 13 case. Ocwen further asserts that Rule 2016 on its face only applies to fees and charges to be collected from the estate, and Ocwen is not seeking money from the estate. Ocwen argues that any fees it collected would have been postdischarge fees, and by definition, there is no "estate" to collect fees from postdischarge.

## II.

SUMMARY JUDGMENT STANDARD

A motion for summary judgment is controlled by Rule 56 of the Federal Rules of Civil Procedure, which is applicable to bankruptcy proceedings pursuant to Rule 7056 of the Federal Rules of Bankruptcy Procedure. A court shall grant summary judgment to a moving party when the movant shows that "there is no genuine issue as to any material facts and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Bankr. P. 7056(c). In *Anderson v.*

3

*Liberty Lobby, Inc.*, 477 U.S. 242, 106 S. Ct. 2502, 91 L.Ed. 2d 2020 (1986), the Supreme Court found that a judge's function is not to determine the truth of the matter asserted or weight of the evidence presented, but to determine whether or not the factual disputes raise genuine issues for trial. *Anderson*, 477 U.S. at 249-50. In making this determination, the facts are to be looked upon in the light most favorable to the nonmoving party. *Id.*; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L.Ed. 2d 265 (1986); *Allen v. Bd. Of Public Educ. for Bibb County*, 495 F.3d 1306 (11th Cir. 2007).

As to each of their summary judgment motions, each moving party bears the burden of proving there is no issue as to any material fact and that judgment should be entered as a matter of law. Fed. R. Bankr. Pro. 7056(c). Proof must be by a preponderance of the evidence, see, e.g, *In re McKinnon*, 378 B.R. 405, 411 (Bankr. S.D. Ga. 2007) (stating that "the default standard of proof in a bankruptcy case" is preponderance of the evidence), except perhaps the civil contempt request. Many cases state that civil contempt requires clear and convincing evidence. *In re Rimsat, Ltd.*, 208 B.R. 910 (Bankr. N.D. Ind. 1997); *In re Arnold*, 206 B.R. 560 (Bankr. N.D. Ala. 1997); *In re Gunter*, 389 B.R. 67 (Bankr. S.D. Ohio 2008); *In re Lang,* 398 B.R. 1 (Bankr. N.D. Iowa 2008).

The Court will discuss each summary judgment motion and the subparts of each in turn. However, as a preliminary matter the Court concludes, upon review of the motions and attachments, that no genuine issue of material fact remains as to any matter raised. The Glenns and Ocwen agree, or have unrebutted evidence, as to all of the facts set forth above. Therefore, the Court will decide all matters at issue in the case through this opinion.

### III.

### A.

Plaintiffs' Motion for Summary Judgment

4

The Glenns' summary judgment motion has three prongs. First, Ocwen failed to remove the disallowed charges from the Glenns' account and this action violated the Court's May 2, 2006 order and should be enjoined and sanctioned. Second, Ocwen's postdischarge payment statements and reports to the credit reporting agencies violated the Glenns' discharge injunction. Third, the Court has authority to compensate the Glenns and sanction Ocwen for its improper actions under 11 U.S.C. § 105 or the Court's contempt powers.

1.

Did Ocwen's failure to remove the disallowed charges from the Glenns' account record violate the Court's order of May 2, 2006? The May 2, 2006 order stated "It is ORDERED that the claim of Ocwen Federal Bank in the amount of $21,549.99 is disallowed; and that the debtors' objection to said claim is SUSTAINED." There is no dispute that the amount was not removed from the account records until some date after September 19, 2009. For this failure to remove charges, the Glenns seek a contempt sanction or disgorgement.

Although the charges were not removed from the Glenns' account record for over 3 years after the order disallowing them, Ocwen made no attempt to collect the charges. It listed them on its payment statements but did not, in any way, charge them against the Glenns' account. Ocwen's testimony is that it admittedly erred in not removing a litigation hold on the file earlier than it did, but the issue has been rectified. The Court concludes that Ocwen did not violate the Court order. It did not attempt to collect the disallowed amount. The posting itself did not cause any harm.

This case is distinguishable from the *Slick* case previously decided by this Court. *Slick v. Norwest Mortgage, Inc.*, Adv. No. 99-1136, (Bankr. S.D. Ala. 2002). In the order awarding judgment to the plaintiffs dated May 10, 2002, the Court ruled that postpetition preconfirmation proof of claim preparation fees not disclosed to debtors were not collectible by Norwest

5

Case 09-01089    Doc 50    Filed 05/28/10    Entered 05/28/10 17:03:47    Desc Main
Document      Page 5 of 11

Mortgage, Inc. The Court sanctioned Norwest under 11 U.S.C. § 105. In this case, Ocwen did disclose its proof of claim fee on its proof of claim. The *Slick* case was premised on nondisclosure by creditors. In this case, there is no issue of nondisclosure. In fact, disclosure of the fees and charges is what prompted this suit.

The fact pattern in this case is like that in *Saylor v. Select Portfolio Servicing, Inc.*, 2008 WL 2397344 (M.D. Ala. 2008). A debtor submitted a Qualified Written Request under the Real Estate Settlement and Procedures Act, 12 U.S.C. § 2605, to review charges made to his mortgage. The QWR included two preconfirmation charges that were not disclosed in a proof of claim upon which the debtor relied to calculate his plan payments. The court held that "recording an amount as a bookkeeping entry does not constitute an act that violates the automatic stay." *Id*. at *4 (citing *Mann v. Chase Manhattan Mortgage Corp.*, 316 F.3d 1, 3-4 (1st Cir. 2003)). It is also similar to the *In re Redmond* case, 380 B.R. 179 (Bankr. N.D. Ill. 2007) in which a payoff letter was sent to a debtor upon the debtor's request. The debtor then alleged that the payoff letter violated the stay because it included improper fees and charges. The court held that the letter did not attempt to collect the fees and was sent at debtor's prompting. This case is unlike *In re Sullivan*, 367 B.R. 54 (Bankr. N.D.N.Y. 2007) in which the posting of the fee was followed by a refusal to turn over an abstract of title necessary to sell the debtor's home. The *Saylor* and *Redmond* cases showed no damages to the debtor from the fee disclosure, just as in this case.

The *Mann* case stated that bookkeeping entries of a creditor might be actionable as stay violations if the communications were "harassing." *Supra*, at 4. There is no proof that the statements in this case were harassing. In fact, the Glenns testified at their depositions that they knew they only had to pay the normal monthly amounts when they received the statements with the added fees and charges.

Ocwen asserts that the failure to remove the disallowed charges earlier cannot be dealt with as contempt. It states that contempt is not a cause of action, only a remedy. Failure to obey a court order is punished by contempt, regardless of how one characterizes it—as action or remedy. What the Glenns are asserting is that Ocwen exhibited "a disregard of, or disobedience to, the rules or orders of. . . [a court]." Edward M. Dangel, *Contempt* §1, at 2 (1939) as cited in Garner, B.A., ed., BLACK'S LAW DICTIONARY, Eighth Edition (2004). However, even though the Glenns have stated a cause of action/remedy, they fail to prove its elements. The Glenns must prove (1) the existence of an order that is in effect, (2) the requirement of specific conduct in the order, and (3) the violation of the order. *In re Coastal Land Development Corp.*, 2009 WL 2985700 (Bankr. S.D. Miss. 2009) (*citing Piggly Wiggly Clarksville, Inc. v. Mrs. Baird's Bakeries, Inc.*, 177 F.3d 380, 382 (5th Cir. 1999)). The Glenns have proven that an order exists, but they have proven no violation or damage. The language of the order does not require the alteration of Ocwen's accounting records. Also, civil contempt is usually coercive, not punitive. *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 828, 114 S. Ct. 2552, 129 L.Ed.2d 642 (1994) (holding that "the contemnor is able to purge the contempt and obtain his release by committing an affirmative act, and thus 'carries the keys of his prison in his own pocket.'"). If the alleged contemnor purges itself of contempt, no remedy is available. Ocwen has taken all of the fees and charges disallowed by the order out of its records. There remains nothing to punish. The motion for summary judgment for damages for violation of the May 2, 2006 order is denied.

2.

Did Ocwen's postdischarge actions violate the discharge injunction of the Glenns? This cause of action is similar to the alleged court order violation cause of action. The difference is that the root of the claim is 11 U.S.C. § 524(a), not contempt. Section 524(a)(2) states that it

7

"operates as an injunction against the commencement or continuation of an action . . . or an act, to collect, recover or offset . . . [a prepetition] debt . . . of the debtor." The actions of Ocwen in including the disallowed amounts in billings and reporting the arrearages as "past due" to a credit union three times are the alleged violations.

Based upon the language of the statute, Ocwen did not attempt to collect or recover or offset its debt when it included the disallowed amounts in billings. It listed the debt, but made no attempt to collect it. The reporting of the amounts as "past due" to the credit reporting agencies may have been an attempt to collect the debt. If the Glenns had presented evidence that they felt pressured to pay the disallowed amount due to the credit bureau reports, the action might have been a subtle attempt to collect the debt. However, there is no fact in evidence of any resulting action or inaction by the Glenns. Furthermore, the Glenns must have suffered damage for the reporting to be actionable. There is no evidence of any loan or credit denials or higher interest rates charged. Therefore, the claim under § 524 fails.

The Court does not need to decide whether there is a private right of action under § 524(a). Since there is no damage alleged, whether there is a right of action or not is irrelevant.

3.

Did Ocwen act in a manner that should subject it to sanctions pursuant to 11 U.S.C. § 105(a) even if § 524(a) does not establish a private of action? The Glenns assert that the Court can and should sanction Ocwen's actions under § 105 of the Bankruptcy Code. It provides that:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

As stated above, since there is no allegation of damage and the Court concludes that Ocwen did not violate its order or commit and abuse of process, the Court does not need to decide this issue and the Glenns' motion for summary judgment on this point is denied.

B.

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

1.

Ocwen asserts that its conduct did not violate section 524(a)(2) and sanctions should not be imposed upon it. The court addressed this issue above and concluded that there was no violation of section 524(a)(2) and, therefore, the motion of Ocwen for summary judgment is due to be granted.

2.

Ocwen asserts that Rule 2016 does not impose a duty to provide notice or obtain court approval of postpetition fees and charges assessed under its mortgage. Fed. R. Bankr. P. 2016 provides that an entity seeking "compensation for services [] or reimbursement of necessary expenses [] from the estate" must file an application for the fees. There are several issues to be addressed. (1) Is there a private cause of action for a violation of Rule 2016? (2) Must a lender file a fee application to collect fees assessed predischarge or does section 1322(b)(2) allow a mortgage creditor to wait and seek payment of the charges postdischarge? (3) If there is any right, what is the remedy?

a.

This court in a previous opinion ruled that secured creditors could file a proof of claim in a chapter 13 bankruptcy case that contained all postpetition, preconfirmation charges, including attorneys fees so as to allow the debtor to cure all defaults as provided in section 1322(b)(2) and (b)(5) allowing the "curing . . .of any default." The court held that no attorneys fee applications under Rule 2016 would be required. *In re Slick*, *supra*. Since the issuance of that opinion, courts have issued differing opinion on whether mortgage lenders can collect postpetition predischarge attorneys fees without a fee application. *In re Atwood*, 293 B.R. 227 (B.A.P. 9th Cir.2003); *In re Powe*, 281 B.R. 336 (Bankr. S.D. Ala. 2001); *In re Gifford*, 256 B.R. 661 (Bankr. D.Conn. 2000); *In re Tate*, 253 B.R. 653 (Bankr. W.D.N.C. 2000) (*contra*). However, the *Slick* opinion and other cases cited above do not address postpetition postconfirmation fees.

This court concludes that it does not need to address the issue of whether a debtor has a private right of action under Fed. R. Bankr. P. 2016 because there has been no proof of damages. The Glenns cannot prevail whether there is a right of action or not. The Ocwen motion for summary judgment is due to be granted.

b.

Ocwen argues that it has a right to assess whatever charges and fees it is allowed to assess under its mortgage agreement with the Glenns because section 1322(b)(2) prevents any modification of its rights in a chapter 13 plan. In fact, under the facts of this case, Ocwen did not actually collect any postpetition fees. Although the fees were shown on the Glenns' monthly payment statement, the fees were not charged to them. Therefore, there is no need to decide whether section 1322(b)(2) is dispositve of this issue because the Glenns have shown no damages. The Ocwen motion for summary judgment is due to be granted.

c.

The same is true of the question of what would be the proper remedy, disgorgement or sanctions or both, if such a collection occurred. There is no need to decide the issue under the facts of this case. Ocwen collected no postpetition fees from the Glenns. The posting and the sending of the statement containing the fees and charges is not sufficient to be a violation of the Glenns' discharge or require any remedy for postpetition prediascharge posting. The same is true of the notice to the credit reporting agencies. The Ocwen motion for summary judgment is due to be granted.

IT IS ORDERED that

1. The motion of the plaintiffs for summary judgment is DENIED;

2. The motion for summary judgment for defendant is GRANTED;

3. Judgment is awarded to Ocwen Loan Servicing, LLC against the plaintiffs, Donald Thomas Glenn and Sheila Campbell Glenn.


Dated: May 28, 2010


*Margaret A. Mahoney*
MARGARET A. MAHONEY
CHIEF U.S. BANKRUPTCY JUDGE